THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* CARL A. RICHTER, Defendant.

City Magistrate's Court of New York, Borough of Richmond, Staten Island Court, July 1, 1943.

*Farrell M. Kane, District Attorney (Joseph A. McKinney of counsel), for plaintiff.*

*Peter F. Gulotta* and *Mitchell S. Fisher* for defendant.

*Albach C. Fach* for Arthur Thompson, witness.

PINTO, C. M. The defendant is charged with violating sections 1782 and 1783 of the Penal Law, in that while he was a member of a Richmond County Grand Jury he disclosed to one Arthur Thompson that certain indictments had been found and also some of the evidence adduced before them.

On the hearing, the District Attorney called Thompson as a witness for the purpose of eliciting testimony showing that defendant had made the disclosures to him. The witness, taking refuge behind the constitutional prohibition against self incrimination, refused to answer. In order to properly understand the position taken by the witness, it is necessary to briefly set forth the background of this prosecution.

It appears that defendant Richter was a member of the January, 1941, Richmond County Grand Jury, commonly known

as the "Amen Grand Jury", which was charged with the responsibility of investigating certain street-paving contracts. On June 3, 1941, the said Grand Jury voted to indict a number of corporations and individuals for violation of sections 340 and 341 of the General Business Law, but the true bills were not handed up to the County Judge until June 6th. Shortly thereafter, information reached the Grand Jury that disclosures had been made as to such indictments before the accused parties were apprehended. On July 2, 1941, Arthur Thompson was called before the Grand Jury. He denied that any member of that body was involved and gave a vague explanation of having obtained the information from several unknown men. Thereupon, Thompson was cited for contempt of court. But, before that motion was acted upon, he requested permission to go back before the Grand Jury. He attended again on July 18, 1941, without signing a waiver of immunity, and then admitted that Carl A. Richter, the defendant, had been his informant. Requested to explain his prior testimony, Thompson said, "Well, I was not prepared for what I was being asked. My first thought was to protect a friend, and I did the best I knew how." He also disclaimed any deliberate intent to commit perjury. The defendant, Richter, also appeared, waived immunity, and frankly admitted that he had made the disclosures to. Thompson with whom he had been on friendly terms for some years.

Whereupon, the Grand Jury directed the District Attorney to file an information in the Court of Special Sessions charging Richter with violating sections 1782 and 1783. of the Penal Law which prohibit disclosure of Grand Jury action and evidence. The defendant was arraigned in the Court of Special Sessions and pleaded not guilty. Subsequently, he moved in the County Court to set aside the information. There was considerable delay before that application was acted upon because the District Attorney challenged the jurisdiction of the County Court to pass on the motion. The Court of Appeals finally upheld the right of the County Court to act (*Matter of Innes* v. *Cosgrove,* 177 Misc. 464, affd. 263 App. Div. 880, affd. 288 N. Y. 700), and on July 8, 1942, the information was dismissed. No further steps were taken until June 1, 1943, when this proceeding was instituted charging the defendant with the identical crimes of which he had been accused by the Grand Jury.

The important issue now presented for determination is whether the witness, Arthur Thompson, should be compelled to answer the questions propounded to him on this hearing.

The first interrogatory which he refused to answer was, " Did you have any conversation with the defendant, Carl A. Richter, before the 6th of June, 1941, concerning matters pending before the January term of the Grand Jury in Richmond County? " The witness asserted that the answer would tend to incriminate him. His distinguished counsel, the former District Attorney of Richmond County, was permitted to address the court and submit a memorandum of law in defense of the attitude taken by the witness. It is argued that if Thompson is forced to reveal the conversation he had with Richter as asked for in the question, it would tend to incriminate him of two crimes: (one) as an accessory to defendant Richter, which is a misdemeanor; and, (two) perjury.

The principle that condemns any attempt to compel a witness to answer questions that might incriminate him of a crime is one of the most important safeguards of our organic law in protecting our civil liberties and rights. In section 6 of Article I of the State Constitution, we find the provision that no person shall " be compelled in any criminal case to be a witness against himself," which is identical with the Fifth Amendment to our Federal Constitution. It is settled that these constitutional enactments apply not only to defendants but as well to persons acting as witnesses. (*People ex rel. Lewisohn* v. *O'Brien,* 176 N. Y. 253.) In discussing this subject, Professor Wigmore states, " In preserving the privilege, however, we must resolve not to give it more than its due significance. We are to respect it rationally for its merits, not to worship it blindly as a fetish." (8 Wigmore on Evidence [3d ed.] § 2251.)

The authorities uniformly hold that the witness is to be his own judge as to whether his answer will tend to incriminate him except where the court is convinced that there is no substance to his claim and that his refusal to answer is a mere device or pretext to shield some third party. (*People ex rel. Taylor* v. *Forbes,* 143 N. Y. 219; *People ex rel. Lewisohn* v. *O'Brien, supra; Matter of Cappeau,* 198 App. Div. 357.)

In *People* v. *Priori* (164 N. Y. 459) the court, at page 465, declared that " Whether such privilege should be allowed or disallowed rested somewhat in the discretion of the court." And again, at page 466, it wrote, " We think, under all the circumstances, whether this witness should have been required to answer * * * was for the trial court to determine and rested largely in its discretion."

The same thought is expressed in *People ex rel. Taylor* v. *Forbes* (*supra,* p. 231) as follows: " The weight of authority

seems to be in favor of the rule that the witness may be com-
pelled to answer when he contumaciously refuses, or when it
is perfectly clear and plain that he is mistaken, and that the
answer cannot possibly injure him, or tend in any degree to
subject him to the peril of prosecution.''

It always remains for the court to decide whether there is
any substance or merit to the constitutional right asserted by
the witness. (*Matter of Cappeau, supra.*)

Manifestly, if the law were otherwise the administration of
justice would suffer irreparably and even the foundations of
our government might be seriously endangered.

The problem naturally arises as to how far the courts may
proceed in any inquiry to determine whether a witness is
claiming the privilege in good faith to avoid a reasonable
possibility of prosecution. None of the leading cases give this
subject any special attention. It seems to me the judicial probe
should be most searching, especially when the facts and cir-
cumstances, as in this case, are unusual, to insure against an
unjust result to either the witness or the public. That pro-
cedure has been followed herein but with a full realization that
the witness starts with a presumption in his favor that he alone
knows the substance of his evidence and so he is logically the
best judge as to whether the answers would in fact open the
door to criminal liability against him. I have also kept con-
tinually in mind the fact that Thompson is an intelligent busi-
ness man of mature age, and so he is presumed to fully
appreciate the necessity of upholding law and order as against
a natural impulse to protect an old friend from prosecution.
It should be noted that I have also considered realistically the
position of the People. It does not seem unfair to assume that
even the witness knows that without his testimony the prosecu-
tion will fail to establish a *prima facie* case. The only other
available evidence is the admission of the defendant, and that
is insufficient under our procedure (Code Crim. Pro. § 395).
I believe it is within the province of the court to consider such
an important factor in evaluating the intention of the witness
whose testimony, if disclosed, would turn the scales against a
friend on trial.

Aside from the bare assertion that Thompson may reveal
information which will incriminate him of the two crimes
named, counsel for the witness has failed to enlighten the court,
by using hypothetical situations or otherwise, as to how Thomp-
son may be subject to any real danger of prosecution. It must
be borne in mind that the protection against self-incrimination

is confined to real danger and does not extend to remote possibilities out of the ordinary course of law. (*Heike* v. *United States*, 227 U. S. 131; *Mason* v. *United States*, 244 U. S. 362; *People ex· rel. Lewisohn* v. *O'Brien*, 176 N. Y. 253, *supra.*)

From a careful review of all material facts in this case, the following stand out as indisputable:

(1) Thompson's original testimony before the Grand Jury, without signing a waiver of immunity, was untrue. He admitted later he had concocted the prior story to protect Richter, his friend for many years.

(2) His subsequent statement to the Grand Jury, also without waiver of immunity, was undoubtedly true, especially when we consider that he had no motive to harm Richter. But, regardless of lack of motive, all doubt on the subject was removed by Richter himself who, under oath before the same Grand Jury, and under a waiver of immunity, corroborated Thompson on every detail.

Thompson has been called at this time to confirm and reiterate his second statement made to the Grand Jury. The purpose of the District Attorney has been made perfectly clear to the witness. Now let us apply the law to these facts. Thompson may have committed perjury on his initial appearance before the Grand Jury but, if he did, such a charge cannot be predicated thereupon because the witness returned before the same body prior to the completion of their investigation and fully corrected his testimony. The law encourages the correction of erroneous, and even intentional, false statements. (*People* v. *Gillette*, 126 App. Div. 665; *People* v. *Brill*, 100 Misc. 92.) In addition, we have the assurance made in open court by the District Attorney that there was no intention to prosecute Thompson if he told the truth and repeated the statements that he made before the Grand Jury on his second appearance.

As to the possibility that Thompson may be an accessory to Richter, the statute (Penal Law, §§ 1782, 1783) does not include the recipient of any Grand Jury information. Furthermore, the offense is a misdemeanor. The two-year Statute of Limitations applies and that period expired on June 4, 1943, almost a month ago. And lastly, more conclusive than any other reason assigned, Thompson was given absolute immunity when he testified before the Grand Jury on the subject on which he was questioned, namely, concerning the disclosures of evidence before and. the indictments found by that body. (N. Y. Const. art. I, § 6; Code Crim. Pro. § 10; *People* v. *Rauch*, 140 Misc. 691.)

From the foregoing, the court is convinced that Thompson has no substantial fear of any criminal prosecution, providing he testifies truthfully in this proceeding. The true facts, as previously noted, are contained in his testimony given on his second appearance before the Grand Jury. It is inconceivable to the court that the witness will either return to his original statement of July 2, 1941, or that he will give an entirely new version of the facts. The law naturally presumes that a witness sworn to tell the truth will not violate his oath. The constitutional and statutory provisions against self-incrimination do not protect a witness who commits perjury while testifying under a waiver of immunity. (*People* v. *Reiss,* 255 App. Div. 509; *People* v. *Cahill,* 126 App. Div. 391.)

The conclusion is inescapable that Thompson's real fear is not that he may incriminate himself by admitting the truth, but rather that if he gives false testimony to help Richter he will render himself subject to a prosecution for perjury. The constitutional privilege was never intended to apply to such a situation.

Thompson seems to stand in the same position as the witness in the case of *People* v. *Reiss* (*supra*) in which a person had testified before the Grand Jury regarding his part in collecting graft moneys for the police. He was called by the Grand Jury on a second occasion and refused to answer questions along the same line, claiming that the repetition of his answers previously given to questions involved in the same transactions would tend to incriminate him in respect to perjury claimed to have been committed in his earlier answers where his replies had been willfully and deliberately made. He was convicted of criminal contempt and on appeal the judgment was affirmed. The court held that although the witness was entitled to full immunity under section 584 of the Penal Law from prosecution for his participation in the crimes with respect to which he was called to testify, such immunity did not protect him from prosecution for perjury in respect to false testimony which he may have given.

Another case that appears to be directly in point is *People* v. *Kramer* (257 App. Div. 598).

It is my conclusion, therefore, that Arthur Thompson, the witness in this proceeding, heretofore called and sworn, has asserted a privilege which is without merit and not in good faith because he is under no reasonable fear or danger of incriminating himself. I am further convinced that his claim is a pretext to shield a third party. I therefore rule and order that the witness must answer the questions propounded to him.

After this ruling the witness persisted in his refusal to answer and on July 9th he was found guilty of criminal contempt of court and fined $250 and in default of payment committed to the County Jail for thirty days. The fine was paid.