535 P.2d 6

STATE of Arizona, Appellee,

v.

Jesse Gomez BOJORQUEZ, Appellant.

No. 3000.

Supreme Court of Arizona, In Banc.

May 5, 1975.

N. Warner Lee, Atty. Gen., by Stanley L. Patchell, Asst. Atty. Gen., Phoenix, for appellee.

David B. Lowry, Scottsdale, for appellant.

**HOLOHAN, Justice.**

Jesse Gomez Bojorquez appeals from a judgment and sentence on two counts of first degree murder, A.R.S. §§ 13–451, 452, 139, 140, and one count of being a prisoner in possession of a deadly weapon, A.R.S. § 31–232, for which he was sentenced to prison for 75 to 99 years on the weapons charge and concurrent life sentences on each of the murder convictions, the latter sentences to commence after completion of the 75 to 99 year term.

Appellant and several other inmates of the Arizona State Prison were tried jointly for various offenses following the takeover of a cellblock at the prison on June 22, 1973, during which two prison guards were killed.

Appellant Bojorquez was convicted of the murders of the guards and for being in possession of a deadly weapon. From the judgment and sentence, he has filed a timely appeal.

The issues raised by the appellant include:

1) Whether the superior court lacked jurisdiction to entertain the grand jury indictment;

2) Whether the grand jurors were properly qualified;

3) Whether allowing the county attorney to prosecute by indictment or information violates constitutional equal protection doctrine;

4) Whether statements made by the county attorney constituted an undue influence upon the grand jury;

5) Whether the appellant was entitled to a severance because of alleged statements made by a co-defendant during the investigation;

6) Whether exclusion of convicted felons, whose civil rights have not been restored, from jury service violates constitutional standards;

7) Whether disagreement on peremptory jury challenges between co-defendants entitles each defendant to the

full number of challenges otherwise available to a lone defendant;

8) Whether circumstances of an out of court photo identification were impermissibly suggestive;

9) Whether testimony transposing identities of the two murder victims, subsequently corrected, warranted striking all of the witness' testimony and forbidding further testimony based upon the autopsy report; and

10) Whether the sentence was excessive.

Appellant has failed to present a record supporting his challenges to 1) the jurisdiction of the superior court to entertain the grand jury indictment and 2) the impanelment of the grand jury.

■ It is the duty of counsel who raises objections on appeal to see that the record before us contains the material to which he takes exception. State v. Ford, 108 Ariz. 404, 499 P.2d 699 (1972), cert. denied, 409 U.S. 1128, 93 S.Ct. 950, 35 L. Ed.2d 261 (1973). Where matters are not included in the record on appeal, the missing portions of the record will be presumed to support the action of the trial court. State v. Brooks, 107 Ariz. 364, 489 P.2d 1 (1971); State v. Wilson, 95 Ariz. 372, 390 P.2d 903 (1964).

■ Appellant contends that, originally, there was a Criminal Rule 1 proceeding, a so-called "one-man" grand jury, resulting in the filing of a complaint. Afterwards, the prosecution presented the matter to a grand jury, secured an indictment and had the original complaint dismissed. An intervening indictment arising from the same activity may supersede the filing of a prior complaint. Carter v. State, 5 Ariz.App. 210, 424 P.2d 858 (1967); People v. Allen, 220 Cal.App.2d 796, 34 Cal.Rptr. 106 (1963); see State v. Vinson, 8 Ariz.App. 93, 443 P.2d 700 (1968), State v. Dennington, 51 Del. 322, 145 A.2d 80 (1958).

■ Counsel for Bojorquez also complains that the grand jury was improperly impaneled. Again, it was counsel's duty to present a record on the impanelment.

Without such a record, we will presume that the matter was accomplished under proper procedure. State v. Brooks, *supra*; State v. Wilson, *supra*.

The third issue raised by Bojorquez is that the unfettered discretion of the county attorney to alternatively prosecute by indictment or information, Ariz.Const. art. 2, § 30, is a denial of equal protection under the Fourteenth Amendment to the United States Constitution.

It is suggested that, because certain procedures at a preliminary hearing (notice of charges, right to counsel, subpoena of witnesses, right of confrontation, testifying on own behalf) are not attendant to a grand jury proceeding, defendants in the same or similar circumstances are treated so differently as to deny them equal protection of the laws.

■ While the appellant attempts to point up the disadvantages of the grand jury system, as compared to the information route, the indictment method by a grand jury is recognized as a fundamental element of the accusatory process under the United States and Arizona Constitutions. U.S.Const. amend. V; Ariz.Const. art. 2, § 30. Either method—indictment by grand jury or information after preliminary hearing—is constitutionally proper.

". . . [A] prosecuting attorney may proceed by either indictment or information without violating the Fourteenth Amendment of the United States Constitution, notwithstanding the fact that these two alternatives provide completely different procedures." State v. Cousino, 18 Ariz.App. 158, 160, 500 P.2d 1146, 1148 (1972).

■ Appellant also argues that the grand jury process deprived him of the opportunity for discovery. The purpose of a preliminary examination is not to grant the defendant an opportunity for discovery but to determine probable cause to hold the defendant to answer. State v. Miranda, 104 Ariz. 174, 450 P.2d 364 (1969), cert. denied, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122. Any discovery that occurs at a pre-

liminary hearing is incidental to that proceeding and is not a right of the defendant. State v. Miranda, *supra*; State v. Kanistanaux, 68 Wash.2d 652, 414 P.2d 784 (1966). Moreover, discovery is provided in that the transcript of the grand jury proceedings is made available to the defendant. A.R.S. § 21–411(A).

Appellant's fourth argument challenges certain statements made by the county attorney during the grand jury proceedings. It is contended that the remarks were improper and constituted an undue influence upon the traditionally independent deliberations of the grand jury.

After a dozen witnesses testified concerning the actions of four prospective defendants, the prosecutor explained the applicable law of the case to the grand jury and made several statements advising the jury that the county attorney's office believed that the evidence substantiated the particular charges.

A.R.S. § 21–408(A) defines the duties of the county attorney in relation to the grand jury:

"The county attorney or other prosecuting officer shall attend the grand jurors when requested by them, and may do so although not requested for the purpose of examining witnesses, in their presence, or of giving the grand jurors legal advice regarding any matter cognizable by them. He shall also, when requested by them, draft indictments and cause process to issue for the attendance of witnesses and other evidence."

■ It is no more proper for a prosecutor, before a grand jury, to express his personal opinion as to a person's guilt or innocence than it is to make such statements during arguments at trial. State v. King, 110 Ariz. 36, 514 P.2d 1032 (1973); State v. Abney, 103 Ariz. 294, 440 P.2d 914 (1968).

■ Any terminology expressing personal belief was improper. The prosecutor made a more properly formed statement when he said: "We feel the evidence as to

[his] . . . participation in this deserves your consideration . . . ." While the former remarks were impermissible, they did not result in prejudicial error.

Bojorquez next objects to the trial court's denial of a motion to sever the trial of his cause from that of co-defendant Charles Edward Belt. According to investigative reports of the Department of Public Safety, Belt had made statements implicating the appellant in the murders. None of these statements were offered into evidence by the State or referred to at any time during the trial. The trial court granted Belt's motion for a directed verdict at the close of the State's case.

Bojorquez's counsel argued that the mere existence of the accusatory statements had forced him into a trial strategy whereby cross-examination of witnesses that might have adversely reflected on Belt was restricted for fear that Belt would take the stand to implicate Bojorquez. Appellant's motion for mistrial was denied.

■ The trial judge's discretion in ruling on a requested severance, Rule 254, Rules of Criminal Procedure (1956), will not be reversed absent a clear abuse of discretion. State v. Clayton, 109 Ariz. 587, 514 P.2d 720 (1973); State v. Webb, 101 Ariz. 307, 419 P.2d 91 (1966).

Appellant's argument has no merit. The issue does not reach constitutional dimensions affecting the right of confrontation since no trial use of the statement was threatened or occurred. *See* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Appellant was on notice that there was no intention by the state to use the statement because the state made no attempt at any time to establish the statement as being voluntarily made as required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Once Belt was directed out of the case, counsel for Bojorquez did not indicate any interest in recalling witnesses whom he supposedly treated with restraint during cross-examination.

The appellant has demonstrated no prejudice or denial of his right to confrontation under *Bruton v. United States, supra.* Nor has Bojorquez revealed a clear abuse of discretion in the trial court's refusal to grant a severance. *State v. Clayton, supra.*

Appellant's sixth argument challenges the constitutionality of the jury selection process whereby the jury commissioner automatically excluded convicted felons, whose civil rights had not been restored, from jury service.

Since jurors in Arizona must be electors, A.R.S. § 21–201, convicted felons cannot serve as jurors since they cannot vote, Ariz.Const. art. 7, § 2, A.R.S. §§ 13–1653(A), 16–101(5), unless their civil rights are restored, A.R.S. § 13–1741 et seq.

Jury service is not a matter of choice or right, but is a duty imposed by the state on such terms as the state may set. *State v. Webb, supra;* County of Maricopa v. Clifford Corp., 44 Ariz. 506, 39 P.2d 351 (1934).

"It has long been accepted that the Constitution does not forbid the States to prescribe relevant qualifications for their jurors. The States remain free to confine the selection to citizens, to persons meeting specified qualifications of age and educational attainment, and to those possessing good intelligence, sound judgment, and fair character." *Carter v. Jury Commissioner of Greene County,* 396 U.S. 320, 332, 90 S.Ct. 518, 525, 24 L.Ed.2d 549 (1970) (footnotes omitted). The United States Supreme Court has also upheld provisions allowing a jury commissioner to eliminate from jury service anyone who is not an "upright" citizen. *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

Requiring jurors to be electors attempts to insure that citizens who uphold and obey the law will be selected as jurors to discharge the responsibility of jury service.

As another issue, the appellant claims that each of the three co-defendants was entitled to the full number of peremptory challenges that would have been available to a defendant being tried individually.

Rule 225, Rules of Criminal Procedure (1956), permitted ten peremptory challenges each to the state and defendant where the offense charged was punishable by life imprisonment. Rule 226 applied Rule 225 to joint trials of several defendants:

"A. If two or more defendants are jointly tried they shall collectively be allowed the number of peremptory challenges specified in Rule 225 only in case they join in such collective challenges, but in addition to such challenges each defendant shall be allowed the following number of peremptory challenges, which may be separately exercised:

"1. Two, if the offense charged is punishable by death or imprisonment for life.

"2. One, if the offense charged is not punishable by death or imprisonment for life.

"B. In the case provided in subsection A the state shall be allowed as many challenges as are allowed to all the defendants."

Appellant urges that the language "only in case they join in such collective challenges" requires the co-defendants to agree on their ten, collective challenges or else each be entitled to ten, separate challenges. Instead, the trial judge divided the ten challenges between the three defendants, giving Bojorquez four of the ten. The remaining defendants received three challenges each. Additional challenges were accorded, individually, per Rule 226(A)(1).

A decade ago, this Court pointed out that a particular trial court should have allowed only ten challenges collectively among all co-defendants, plus separate challenges permitted under Criminal Rule 226. *State v. Goodyear,* 98 Ariz. 304, 404

P.2d 397 (1965), rev'd on other grounds, 100 Ariz. 244, 413 P.2d 566 (1966). If each defendant in a joint trial situation was entitled to the full, ten challenges specified in Rule 225, there would be no rationale for allowing the extra challenges to each co-defendant as provided in Rule 226.

In Goodyear, *supra*, 98 Ariz. at 315, we adopted language by which the Utah Supreme Court resolved the same legal issue as is presented here, involving a similar procedural rule:

> "Defendants contend that [the Rule] . . . applies only where no defendant objects to joining in the collective peremptory challenges, but if any defendant objects thereto such defendant is entitled to the full number of challenges . . . which he may exercise separately. This position is not tenable . . .
>
> " . . . Their complaint is that the court refused to allow them ten separate challenges each but required them to make their ten challenges collectively. Where there are two or more defendants the statute does not provide for additional separate challenges if defendants refuse to join in the collective challenges. It provides for collective challenges which can only be exercised jointly. The ruling of the court was therefore correct." State v. Nemier, 106 Utah 307, 310–11, 148 P.2d 327, 328 (1944).

For an eighth point, the in-court identifications of Bojorquez by two eyewitnesses are assailed as being tainted by suggestive, pre-trial photo identifications.

Under different circumstances, fellow inmates Benjamin Franklin Pritchett and Clifton Williams were shown photographs of various individuals during investigation of the prison uprising. The trial court conducted separate hearings to determine the validity of the pre-trial photo identifications. State v. Dessureault, 104 Ariz. 380, 453 P.2d 951 (1969), cert. denied, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).

Whether an in-court identification is tainted by prior identification procedures is a preliminary inquiry of the trial judge, not to be overturned on appeal absent a clear and manifest error. State v. Milonich, 111 Ariz. 442, 532 P.2d 504 (1975); State v. Williams, 111 Ariz. 175, 526 P.2d 714 (1974).

As to Pritchett, the trial judge concluded that the circumstances of the witness' pre-trial identification of the co-defendants was unduly suggestive. The effect of the judge's finding was to exclude any evidence of Pritchett's having identified Bojorquez through a photo identification. The state was thus precluded from offering that kind of evidence in support of the proposition that Pritchett had previously identified Bojorquez as a participant in the prison turmoil. The next concern was whether the improper photo identification would taint any subsequent in-court identification. Since Pritchett had seen the defendant in prison four or five times before the cellblock takeover, the court concluded that Pritchett knew Bojorquez well enough to make an in-court identification that was untainted by the prior photo identification.

The record supports an informed judgment, by clear and convincing evidence, that Pritchett's in-court identification had an independent source through previous prison contact regardless of any impropriety in the photo identification. State v. Meronek, 110 Ariz. 444, 520 P.2d 492 (1974); State v. Lang, 107 Ariz. 400, 489 P.2d 37 (1971); State v. Dessureault, *supra*.

As to Williams, the trial court concluded that his photo identification of the defendant was not made under unduly suggestive circumstances. At the *Dessureault* hearing, Williams said that investigators asked him on two occasions if he recognized any of the individuals in several photographs placed before him. Williams was able to identify individuals by name who had done certain things during

the prison melee. He stated that he knew who the participants in the crime were before the pictures were shown to him. In fact, he said he had known Jesse Bojorquez for nine or ten years preceding the incident in question. Because he knew who the individual culprits were, Williams said that he did not rely on the photographs in telling the officers what happened. At trial, the prosecutor did not attempt to introduce Williams' photo identification.

There was no error in the admission of the in-court identification by eyewitnesses Pritchett and Williams.

Appellant Bojorquez next challenges the testimony of Dr. Thomas B. Jarvis, who conducted autopsies on the two dead prison guards. On direct examination, Dr. Jarvis purported to describe the injuries to Buckley and Morey in establishing their cause of death.

In a hearing out of the presence of the jury, it was established that the doctor had interchanged the names of the two guards and their respective wounds; i. e. references to Buckley's injuries actually applied to Morey's body, and vice versa.

Over objections of defense counsel, the doctor was given an opportunity to correct himself in front of the jury, which he did. Diagrams drawn by Dr. Jarvis, showing the location of injuries were correspondingly relabeled with the correct victim's name. The original confusion arose from the wrong cover sheet being attached to the detailed body descriptions from which Jarvis refreshed his memory.

▬ The law encourages the correction of erroneous statements, it being within the court's discretion to permit a witness to correct testimony previously given. State v. Fields, 199 N.W.2d 144 (Iowa 1972); People v. Richter, 182 Misc. 96, 43 N.Y.S.2d 114 (1943). The effect of the witness' correction was for the jury to weigh in determining the credibility of the witness. State v. Reynolds, 108 Ariz. 541, 503 P.2d 369 (1972); Udall, Arizona Law of Evidence, § 3.

The final issue attacked on appeal is whether the sentence was excessive. On the weapons charge, Bojorquez received a 75 to 99 year sentence. For each of the two first degree murders, he received a concurrent life sentence, to commence after the completion of the 75 to 99 years of confinement.

▬ A trial court's discretion in sentencing will not be disturbed except in unusual circumstances amounting to a clear abuse of discretion, as long as the sentence is within the statutory limits. State v. Villa, 111 Ariz. 371, 530 P.2d 363 (1975); State v. Rogers, 109 Ariz. 55, 505 P.2d 226 (1973); State v. Fischer, 108 Ariz. 325, 498 P.2d 147 (1972).

▬ Punishment for being a prisoner in possession of a deadly weapon is imprisonment for a term of not less than five years. A.R.S. § 31–232(A). At the time of the offense, first degree murder was only punishable by life imprisonment. A.R.S. § 13–453. The sentencing judge could expressly direct that sentence on two or more offenses charged in the same indictment be served consecutively. Rule 339, Rules of Criminal Procedure (1956); State v. Belcher, 108 Ariz. 290, 496 P.2d 590 (1972); State v. Burrell, 106 Ariz. 100, 471 P.2d 712 (1970).

We note that the defendant had twice previously been convicted of crimes of violence and that the latest crimes for which he stands convicted were also ones of violence. The trial court properly concluded that the protection of society required that the defendant be confined for the longest possible term. We find no abuse of discretion in that reasoning and concur in the sentences imposed.

Judgment and sentence affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and LOCKWOOD and HAYS, JJ., concur.