SUPREME COURT OF ARIZONA
En Banc

STATE OF ARIZONA,                    )  Arizona Supreme Court
                                     )  No. CR-05-0062-PR
                       Appellee,     )
                                     )  Court of Appeals
              v.                     )  Division One
                                     )  No. 1 CA-CR 03-1050
MELISSA JEAN GOMEZ,                  )
                                     )  Maricopa County
                     Appellant.      )  Superior Court
                                     )  No. CR2003-012719-001 DT
                                     )
_____ )     **O P I N I O N**

Appeal from the Superior Court in Maricopa County
The Honorable Eileen S. Willett, Judge

**VACATED; REMANDED**

_____

Opinion of the Court of Appeals, Division One
209 Ariz. 373, 102 P.3d 992

**VACATED**

_____

TERRY GODDARD, ARIZONA ATTORNEY GENERAL                     Phoenix
     By    Randall M. Howe, Chief Counsel
           David Wood, Assistant Attorney General
           Criminal Appeals Section
Attorneys for the State of Arizona

ROBERT S. BRINEY, MARICOPA COUNTY LEGAL DEFENDER           Phoenix
     By    Michele Lawson, Deputy Legal Defender (formerly
           with the Maricopa County Public Defender's Office)
Attorneys for Melissa Jean Gomez

_____

**B A L E S**, Justice

¶1       A 1996 initiative measure known as Proposition 200

requires courts to place certain first- and second-time drug

offenders on probation including appropriate drug treatment or education. Ariz. Rev. Stat. ("A.R.S.") § 13-901.01 (2002). Mandatory probation, however, does not apply to any defendant "who has been convicted of or indicted for a violent crime," and such persons may be imprisoned for their drug offenses. A.R.S. § 13-901.01(B).

¶2        The issue here is whether a ten-year-old, dismissed indictment disqualifies a defendant from mandatory probation under Proposition 200. We hold that a dismissed indictment, like a reversed conviction, does not disqualify a defendant from mandatory probation. Our interpretation of the statute makes it unnecessary to reach the constitutional issue decided by the court of appeals, which held that A.R.S. § 13-901.01(B) violates due process and the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), insofar as the statute disqualifies an otherwise eligible defendant from mandatory probation based on the mere existence of a prior indictment. *State v. Gomez*, 209 Ariz. 373, 378-79, ¶¶ 17-20, 102 P.3d 992, 997-98 (App. 2004). Accordingly, we vacate the opinion of the court of appeals, but agree that Gomez's sentence must be vacated and this matter remanded for resentencing.

**I.**

¶3        We granted the State's petition for review because it presents an issue of statewide importance regarding the proper

interpretation of Proposition 200.  *See Calik v. Kongable*, 195 Ariz. 496, 498, ¶ 9, 990 P.2d 1055, 1057 (1999) (granting review to examine the scope of Proposition 200).  We have jurisdiction pursuant to Article VI, Sections 5(3)-(4), of the Arizona Constitution.  The issue is one of statutory construction and is reviewed de novo.  *State v. Estrada*, 201 Ariz. 247, 250, ¶ 15, 34 P.3d 356, 359 (2001).

## II.

¶4     Arizona's voters adopted Proposition 200 to require that certain non-violent drug offenders be placed on probation, with court-supervised drug treatment or education, instead of being imprisoned.  *Id.* at 249, ¶ 2, 34 P.3d at 358.  Officially designated the "Drug Medicalization, Prevention, and Control Act of 1996," the statutory initiative, as amended by a 2002 referendum measure, is codified in part at A.R.S. § 13-901.01.

¶5     Melissa Jean Gomez was convicted at a bench trial in 2003 for possession of marijuana and methamphetamine.  Such a conviction typically would result in probation under Proposition 200.  For first-time offenders, Proposition 200 provides:

> Notwithstanding any law to the contrary, any person who is convicted of the personal possession or use of a controlled substance or drug paraphernalia is eligible for probation. The court shall suspend the imposition or execution of sentence and place the person on probation.

A.R.S. § 13-901.01(A).

3

¶6        Excluded from the mandatory probation provisions, however, are violent offenders:

> Any person who has been convicted of or indicted for a violent crime as defined in § 13-604.04 is not eligible for probation as provided for in this section but instead shall be sentenced pursuant to the other provisions of chapter 34 of this title [containing the general sentencing statute for drug offenses].

A.R.S. § 13-901.01(B).

¶7        Gomez stipulated before trial that she had been indicted for manslaughter in 1994. Manslaughter qualifies as a violent crime under Proposition 200. *See* A.R.S. § 13-604.04(B) (stating "'violent crime' includes any criminal act that results in death or physical injury or any criminal use of a deadly weapon or dangerous instrument"). This indictment was dismissed in 1995 because the prosecutor concluded there was no reasonable likelihood of conviction.

¶8        Based on the dismissed indictment, the trial court ruled that Gomez was ineligible for probation under Proposition 200. This ruling effectively meant that Gomez faced a mandatory prison sentence. Gomez could not receive probation under the general sentencing statute because she had committed her 2003 drug offenses while on parole. *See* A.R.S. §§ 13-604.02(B), -3407(C). Her parole status, however, would not have disqualified her under Proposition 200, which mandates probation

4

for certain non-violent offenders "[n]otwithstanding any law to the contrary." A.R.S. § 13-901.01(A). Having ruled that Proposition 200 did not apply, the trial court sentenced Gomez to presumptive, concurrent sentences of two and one-half years imprisonment for possession of methamphetamine, a dangerous drug, and one year imprisonment for possession of marijuana.

¶9    Gomez appealed her sentence arguing that: 1) a previously dismissed indictment does not disqualify her from probation under Proposition 200, and 2) the use of a prior indictment alone to render her ineligible for probation violates her rights to due process and equal protection.[1] Rejecting the first argument, the court of appeals concluded that the plain language of A.R.S. § 13-901.01(B) "indicates a clear intent to include all prior convictions or indictments for a violent crime as disqualifying" a defendant for probation under Proposition 200. *Gomez*, 209 Ariz. at 376, ¶¶ 9-11, 102 P.3d at 995. The court of appeals, however, vacated the sentence on different grounds after it *sua sponte* ordered briefing on whether the United States Supreme Court's decision in *Apprendi* applied. The court held that using the mere fact of a prior indictment to exclude an otherwise eligible defendant from mandatory probation

---

[1]    Although Gomez initially characterized her constitutional arguments only in terms of due process, the State responded by asserting that certain arguments were in fact based on equal protection claims, and Gomez identified these arguments as based

5

violates *Apprendi's* requirement that any fact necessary to increase the potential maximum sentence must be proven beyond a reasonable doubt. *Id.* at 378-79, ¶¶ 17-21, 102 P.3d at 997-98.

¶10    In seeking review by this Court, the State agrees with the court of appeals that Proposition 200 by its terms renders defendants ineligible for mandatory probation if they have ever been indicted for a violent crime, regardless of the ultimate disposition of the indictment. The State, however, argues that the court of appeals erred in concluding that disqualifying Gomez from probation based on the mere fact of her prior indictment is unconstitutional under *Apprendi*.

### III.

¶11    Our primary objective in construing statutes adopted by initiative is to give effect to the intent of the electorate. *Calik*, 195 Ariz. at 498, ¶ 10, 990 P.2d at 1057. When the language is "clear and unambiguous," and thus subject to only one reasonable meaning, we do so by applying the language without using other means of statutory construction. *Id.* If, however, the language is ambiguous, "we consider the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872

_____

on the equal protection clause in her reply brief.

6

P.2d 668, 672 (1994).

¶12    By its terms, A.R.S. § 13-901.01(B) declares that "[a]ny person who has been convicted of or indicted for a violent crime" is ineligible for mandatory probation. The initial question is whether this language is "clear and unambiguous." *Calik*, 195 Ariz. at 498, ¶ 10, 990 P.2d at 1057.

¶13    The State, consistent with the opinion of the court of appeals, argues that the language is plain and that the exception applies if a person has *ever* been indicted, even if the indictment was later dismissed. Although this is a plausible reading of the statute, it is not the only reasonable interpretation.

¶14    The reading urged by the State would logically suggest that a defendant also would be ineligible for probation if she had ever been convicted of a violent crime, even if the prior conviction had been reversed by the time the defendant was later convicted of a Proposition 200 offense. But the State itself does not urge this interpretation. Nor would it comport with this Court's previous interpretation of other statutes allowing enhanced sentences based on prior convictions.

¶15    This Court has long held that, when a defendant faces an increased sentence based on the fact of a prior conviction, the reversal of a conviction precludes its use to increase the defendant's sentence. *State v. Lindsey*, 149 Ariz. 472, 478, 720

P.2d 73, 79 (1986) (holding that reversal meant convictions were not prior convictions for purposes of harsher sentence); *State v. Lee*, 114 Ariz. 101, 106, 559 P.2d 657, 662 (1976) (same). Thus, these cases indicate that a defendant "has been convicted" of a prior offense for purposes of a sentencing enhancement only if, at the time of the later sentence, there is an existing conviction – not a prior conviction that has been reversed or vacated.

¶16     Similarly, the Supreme Court of the United States has recognized that a federal statute prohibiting the possession of firearms by a person who "has been convicted" of a felony does not apply if the predicate conviction has been reversed on appeal and is no longer outstanding. *Lewis v. United States*, 445 U.S. 55, 60-61 & n.5 (1980). The "plain meaning" of the sweeping statutory language, the Court noted, is that a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of the disability by some affirmative action, such as a qualifying pardon. *Id.* at 60-61. The Court rejected as "extreme" the argument that the phrase "has been convicted" encompasses persons whose convictions have been reversed. *Id.* at 61 n.5; *see also Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 115 (1983) (noting that *Lewis* "recognized an obvious exception to the literal language of the

statute for one whose predicate conviction had been vacated or reversed on direct appeal").

¶17     Consistent with these cases, the State concedes that if a defendant were charged by information and convicted of a violent crime, and the conviction were reversed, it could not be used later to disqualify the defendant from probation under Proposition 200. In other words, the State acknowledges that "has been convicted of or indicted for" does not mean has *ever* been convicted, but rather that there is an existing conviction. *Cf. State v. Kiser*, 111 Ariz. 316, 317, 529 P.2d 215, 216 (1974) (noting that when fact of prior conviction is offered for impeachment, a reversal means "[i]t is as if the prior felony conviction had never occurred").

¶18     Because the phrase "has been convicted of or indicted for" in A.R.S. § 13-901.01(B) excludes those convictions that have been reversed or otherwise vacated, it is not "plain" that the statute nonetheless encompasses those indictments which have been dismissed. The statute could instead reasonably be read to refer to defendants who, at the time of their Proposition 200 sentencing, either stand convicted or are under indictment for a violent crime. Because A.R.S. § 13-901.01(B) is subject to more than one reasonable interpretation, we must look beyond its language to determine its meaning. *See Hayes*, 178 Ariz. at 268, 872 P.2d at 672 (finding statute ambiguous because its text

9

"allows for more than one rational interpretation").[2]

**IV.**

**¶19**      In construing Proposition 200, we must identify the reasonable interpretation that is most consistent with the intent of the voters in adopting the measure. *Estrada*, 201 Ariz. at 250-51, ¶¶ 15-16, 34 P.3d at 359-60; *Calik*, 195 Ariz. at 498, ¶ 10, 990 P.2d at 1057. Given this objective, we reject the State's interpretation of A.R.S. § 13-901.01(B) for three reasons:  1) it would be contrary to the declared purposes of Proposition 200, 2) it could lead to absurd results, and 3) it would unnecessarily raise constitutional concerns.

**¶20**      Proposition 200 is intended both to require less costly, but more effective, treatment programs for non-violent drug offenders and to promote the imprisonment of violent offenders.  The ballot measure noted that using mandatory treatment for non-violent offenders instead of prison could save

---

[2]  Noting that A.R.S. § 13-901.01 uses the word "indicted" in the simple past tense, the dissent reads the statute to exclude from mandatory probation anyone who has ever been indicted for a violent crime, citing *State v. Benak*, 199 Ariz. 333, 334-35, ¶ 6, 18 P.3d 127, 128-29 (App. 2001). *See infra* ¶ 35. The word "indicted," however, must be interpreted in light of the actual statutory language, i.e., "has been convicted of or indicted for."  The fact that "convicted" does not mean has *ever* been convicted illustrates that one cannot identify the "plain meaning" of a statute by reading particular words in isolation. *Benak* is not to the contrary; that decision did not concern the meaning of "has been convicted of or indicted for" and the court of appeals expressly noted that it was not addressing "any issues

the State hundreds of millions of dollars. *Ariz. Sec'y of State 1996 Publicity Pamphlet*, Proposition 200, § 2(4), *available at* http://www.azsos.gov/election/1996/General/1996BallotPropsText.htm. By requiring treatment of non-violent offenders, the measure also expressly seeks to free up space in prisons for violent offenders. *Id.* §§ 2(5), 3(4), 3(5); *Estrada*, 201 Ariz. at 251-52, ¶¶ 20-21, 34 P.3d at 360-61. Consistent with these goals, A.R.S. § 13-901.01(B) excludes violent offenders from the mandatory probation otherwise afforded by Proposition 200.

¶21      These purposes, however, are not promoted by construing A.R.S. § 13-901.01(B) to apply to previously dismissed indictments. Indictments can be dismissed for various reasons, including a prosecutor's determination that the person charged did not in fact commit the crime or – as this case illustrates – that there is no reasonable likelihood of conviction. Dismissal may also result if a court remands a case to the grand jury pursuant to Rule 12.9 of the Arizona Rules of Criminal Procedure for a redetermination of probable cause because a defendant was denied a substantial procedural right. *See Maretick v. Jarrett*, 204 Ariz. 194, 199, ¶ 20, 62 P.3d 120, 125 (2003). The prosecutor may elect not to re-indict or, in cases involving particularly egregious prosecutorial misconduct, the court may order the dismissal of charges with prejudice. *Id.* at 199 n.5, ¶ 20, 62 P.3d at 125 n.5.

_____

with respect to *indictments*." 199 Ariz. at 335 n.1, ¶ 6, 18 P.3d at 129 n.1.

**¶22**    Under the State's interpretation, it does not matter when or why a prior indictment was dismissed:  the mere fact of the indictment forever disqualifies the defendant from mandatory probation under Proposition 200, without any opportunity for the defendant to explain or the court to consider the circumstances of the dismissed charges.  Applying A.R.S. § 13-901.01(B) as the State urges would sweep within the exclusion persons who are not in fact violent offenders and, thus, would be contrary to the statute's intended purposes.[3]

**¶23**    We also interpret Proposition 200 to avoid absurd results.  *Estrada*, 201 Ariz. at 251, ¶¶ 17-18, 34 P.3d at 360. An interpretation is "absurd if it is so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion."  *Id.* ¶ 17 (internal quotation and citation omitted).

---

[3]  The dissent argues that if a dismissed indictment disqualified a defendant from mandatory probation under Proposition 200, the defendant could still seek discretionary probation under the general drug sentencing statute and then contest the factual basis for the prior indictment. *Infra* ¶ 39.  But, as this case illustrates, persons may be eligible for mandatory probation under Proposition 200 for drug offenses even if they would not be eligible for probation for the same offenses under the general drug sentencing statute.  For example, a person convicted of using dangerous drugs while on probation for a prior non-violent felony offense would not be eligible for discretionary probation, *see* A.R.S. §§ 13-604.02(B), -3407(C), but could be eligible for mandatory probation under Proposition 200.

12

¶24     Interpreting A.R.S. § 13-901.01(B) to exclude persons from mandatory probation based on a previously dismissed indictment could lead to absurd results. It would disqualify persons who were indicted even if the prosecutor later dismissed the charges because DNA evidence conclusively established the person was actually innocent. This interpretation also would draw arbitrary distinctions based merely on whether a prior charge was by information or indictment.

¶25     Arizona law allows a prosecuting attorney to proceed with felony charges by way of an indictment, which reflects a grand jury's determination that probable cause exists to believe the defendant has committed the charged offense, or by information. *See* Ariz. Const. art. II, § 30; *State v. Bojorquez*, 111 Ariz. 549, 553, 535 P.2d 6, 10 (1975). An information cannot be filed unless either a court determines at a preliminary hearing that probable cause exists or the defendant waives such a hearing. Ariz. R. Crim. P. 13.1(c). At a preliminary hearing, defendants have various rights that are not attendant to grand jury proceedings, including rights to counsel, to challenge the State's evidence, and to present evidence on their own behalf. *See Bojorquez*, 111 Ariz. at 553, 535 P.2d at 10 (holding that differences in procedures did not deny equal protection to defendants charged by indictment).

13

¶26    The State, as noted, acknowledges that if a person is charged by information of a violent crime and convicted, but the conviction is reversed or vacated, then this conviction would not disqualify the person from later receiving probation under Proposition 200 for a drug offense.  But if the same person is instead charged by indictment, and the conviction is later reversed, the State argues that the mere fact of indictment would still disqualify the person from probation under Proposition 200.

¶27    If a defendant's prior conviction has been reversed or vacated, it would not be rational for probation eligibility under Proposition 200 to depend merely on how the prior offense was originally charged.  *Cf. Estrada*, 201 Ariz. at 251, ¶ 18, 34 P.3d at 360 (concluding that a proposed interpretation of Proposition 200 was not rational when it created unexplained inconsistencies).  Yet the interpretation of Proposition 200 offered by the State produces precisely such a result.

¶28    We also construe statutes, when possible, to avoid constitutional difficulties.  *Hayes*, 178 Ariz. at 272-73, 872 P.2d at 676-77.  Accepting the State's interpretation of A.R.S. § 13-901.01(B) would raise serious constitutional questions. Disqualifying a defendant from probation under Proposition 200 based merely on a ten-year-old previously dismissed indictment, without any further proof by the State of the underlying facts

14

or any opportunity for the defendant to contest the factual basis for the indictment, would raise serious due process issues, as the opinion below demonstrates. Moreover, drawing distinctions, for purposes of probation eligibility, among defendants based merely on whether previously dismissed charges were brought by information or indictment could raise equal protection concerns.[4]

¶29    For these reasons, we construe A.R.S. § 13-901.01(B) as disqualifying a defendant from mandatory probation if, at the time of sentencing for the Proposition 200 drug offense, the defendant stands convicted of, or is under indictment for, a violent crime. Defendants are not excluded from mandatory probation under Proposition 200 based on a previously dismissed indictment, an indictment that ended in an acquittal, or an indictment that resulted in a conviction that has been reversed or vacated and for which a trial is no longer pending. This interpretation fits easily within the intent of the voters who

---

[4]    The dissent discounts the due process and equal protection concerns by stating that defendants who are disqualified from mandatory probation based on a dismissed indictment can still argue that they should receive discretionary probation because they are not in fact violent persons. *See infra* ¶ 39. This alternative does not exist for defendants, like Gomez, who - apart from a dismissed indictment - would be eligible for mandatory probation under Proposition 200 but not eligible for discretionary probation. Having found Gomez ineligible for probation under Proposition 200, the trial court here was required to sentence her to at least two and one-half years in prison under the general drug sentencing statute.

15

passed Proposition 200 while avoiding the pitfalls endemic to the State's interpretation.

¶30 Under our interpretation, drug offenders who face an unresolved indictment for a violent crime, like those convicted of such crimes, cannot claim the benefit of mandatory probation under A.R.S. § 13-901.01(A). Such defendants will not be eligible for mandatory probation unless, prior to sentencing for their drug offenses, the violent crime charges have been resolved by dismissal or acquittal. For that reason, a defendant otherwise eligible for mandatory probation under Proposition 200 may seek to postpone sentencing for the drug offenses until any pending violent crime charges are resolved. Of course, if those charges end in a conviction, that fact itself will disqualify the defendant from mandatory probation.

¶31 Our holding regarding the scope of A.R.S. § 13-901.01(B) makes it unnecessary to reach the constitutional issue addressed by the court of appeals with regard to *Apprendi* or the other constitutional claims raised by Gomez.[5]

_____

[5] We do not understand how the dissent can avoid deciding the constitutional issues while interpreting A.R.S. § 13-901.01(B) to disqualify Gomez from mandatory probation based on the dismissed indictment. *See infra* ¶ 43 note 10. If the statute is so interpreted, the trial court's sentence can be affirmed only by rejecting both the ruling by the court of appeals that A.R.S. § 13-901.01(B) is facially unconstitutional and Gomez's due process and equal protection arguments.

## VI.

¶32    We hold that a defendant is not disqualified from mandatory probation under Proposition 200 based merely on a previously dismissed indictment for a violent crime.  We vacate the opinion of the court of appeals, but agree that Gomez's sentence must be vacated and this matter remanded for resentencing.

_____
W. Scott Bales, Justice


CONCURRING:


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


**B E R C H**, Vice Chief Justice, dissenting

¶33    I respectfully dissent.  I disagree with my colleagues' interpretation of the word "indicted" as meaning under *pending* indictment and would hold instead, as the court of appeals concluded, that A.R.S. § 13-901.01(B) means what it says:  that one convicted of drug possession who has previously been indicted for a crime of violence is not automatically

eligible for the benefit of probation.  *See State v. Gomez*, 209 Ariz. 373, 376, ¶ 10, 102 P.3d 992, 995 (App. 2004).

**¶34**       The legislature has the power to set the sentencing ranges for crimes.  *See State v. Wagstaff*, 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990).  Unless the sentences provided are unconstitutional, courts should defer to the legislative determinations.  *McKinley v. Reilly*, 96 Ariz. 176, 179, 393 P.2d 268, 270 (1964) (stating that "[c]ourts are not concerned with the wisdom of legislative regulation, but examine only to determine if it runs contrary to constitutional guarantees").

**¶35**       In construing statutes, we apply their plain language unless doing so would lead to an absurd, illegal, or unconstitutional result.  *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003); *see also Calik v. Kongable*, 195 Ariz. 496, 498, ¶ 10, 990 P.2d 1055, 1057 (1999) (interpreting Proposition 200 and applying rules of statutory construction to interpretation of a statute resulting from an initiative). Here, the people, acting in their legislative capacity, approved a proposition that uses the term "indicted," unmodified and in the simple past tense.  Its clear meaning is that anyone who has been indicted for a violent offense, whenever in the past that might have occurred, is excluded from mandatory probation under A.R.S. § 13-901.01.  *See State v. Benak*, 199 Ariz. 333, 334, ¶ 6, 18 P.3d 127, 128 (App. 2001) (noting that a person is

18

eligible for probation only "if the person has not previously been indicted for . . . a violent crime"). Such an interpretation comports with common usage and understanding and furthers the goal of denying the benefit of mandatory probation to those who might be violent persons.

¶36        This interpretation is not irrational, nor does it lead to absurd or arbitrary results. *See Heller v. Doe ex rel. Doe*, 509 U.S. 312, 319-21 (1993) (explaining rational basis test); *Ariz. Downs v. Ariz. Horsemen's Found.*, 130 Ariz. 550, 556, 637 P.2d 1053, 1059 (1981) (same). An indictment issues only after a grand jury has found probable cause to believe that a defendant has committed the crime charged. A.R.S. § 21-413 (2002). The allegations contained in the indictment have thus been subjected to some testing before neutral arbiters, and the issuance of the indictment demonstrates probable cause to believe that the defendant might be a violent offender. A rational relationship therefore exists between the public's decision to deny the automatic imposition of probation to violent offenders and the court's initial determination that a defendant who has been indicted for a violent crime may be such a person. *See Lewis v. United States*, 445 U.S. 55, 65 (1980) (requiring relationship between the statutory provision and the purpose to be served).

¶37     Moreover, using an indictment for a violent crime as an indicator that a defendant may be a violent person who is ineligible for automatic imposition of probation provides a bright-line, easy-to-apply rule for separating those immediately eligible for probation under A.R.S. § 13-901.01(A) from those who are not.  Gomez claims that precluding her from eligibility for mandatory probation based solely on the existence of an indictment for a prior violent crime violates due process.  But this is not how the statute operates.  Section 13-901.01(B) does not prohibit the imposition of probation for those who have previously been indicted for a violent crime.  Rather it creates a screening mechanism by which those who have been convicted of or indicted for a prior violent offense, and therefore do not automatically qualify for mandatory probation under § 13-901.01(A), may establish their eligibility for probation through a different statutory process.  Section 13-901.01(B) requires a previously indicted defendant to "be sentenced pursuant to the other provisions of chapter 34 of this title."  Those provisions allow terms of probation for defendants convicted of the drug crimes with which Gomez was charged, if other conditions are satisfied.  *See* A.R.S. §§ 13-902(A)(3) & (4) (2001), -3405(C) (2001), -3407(C) (2001) (allowing terms of probation for class 4 and 6 drug felonies).  At a later hearing, the defendant may contest the existence of the indictment or the factual basis

underlying it.  Such a procedure, triggered by the fact of indictment for a violent crime, does not violate due process.

¶38    The majority posits the arbitrariness of excluding from mandatory probation those who were indicted for violent crimes, but not those who were charged by information.  At first glance, the distinction gives pause.  But three factors militate in favor of nonetheless deferring to the statutory language: First, the Defendant did not pursue an equal protection claim below, although, as the majority opinion notes, she finally did so in her reply brief.  Op. ¶ 9 n.1.  Second, it is well established that a classification may be under-inclusive or not perfectly drawn, yet still survive a rational basis challenge.[6] *See Big D Constr. Corp. v. Court of Appeals*, 163 Ariz. 560, 566, 789 P.2d 1061, 1067 (1990) (noting that "[a] perfect fit is not required; a statute that has a rational basis will not be

---

[6]    The applicable standard by which to review Gomez's eligibility for probation is the rational basis test.  Because probation is a matter of legislative grace, *State v. Smith*, 112 Ariz. 416, 419, 542 P.2d 1115, 1118 (1975), eligibility for it is not a fundamental right.  Therefore the rational basis test applies.  *See Kenyon v. Hammer*, 142 Ariz. 69, 78-79, 688 P.2d 961, 970-71 (1984) (discussing equal protection tests); *Ariz. Downs*, 130 Ariz. at 555, 637 P.2d at 1058.  That test requires that we affirm the classification unless it is "patently arbitrary" or "utterly lacking in rational justification." *Flemming v. Nestor*, 363 U.S. 603, 611 (1960); *see State v. Poshka*, 210 Ariz. 218, 222, ¶ 13, 109 P.3d 113, 117 (App. 2005); *see also Martin v. Reinstein*, 195 Ariz. 293, 313-14, ¶ 66, 987 P.2d 779, 799-800 (App. 1999) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)) (due process "arbitrariness" standard).

overturned 'merely because it is not made with 'mathematical nicety, or because in practice it results in some inequality''") (citations omitted). Third, in attempting to find a rational basis, we may consider any facts that might support the statutory classification, such as, for example, any tendency by prosecutorial agencies to proceed by indictment rather than information in cases involving violent crimes. *See Ariz. Downs*, 130 Ariz. at 556, 637 P.2d at 1059 (concluding that court will uphold constitutionality of a statute under a rational basis test if it can "perceive any set of facts which rationally justif[ies] it"). This perceived basis alone provides a rational basis for the distinction between cases that proceed by indictment versus information. The desire to screen for potentially violent persons also supports the classification.

¶39 The majority also concludes that the use of an old or, as in this case, dismissed indictment leads to arbitrary or unfair results. Op. ¶ 27. That might be the case if determining the existence of the indictment were the end of the inquiry. But under the statutory scheme at issue, the defendant retains the right to make her case that the indictment is too remote to be probative of her current propensity for violence or was dismissed because the State could not prove its case. That is, the defendant retains the right to establish that, despite her prior indictment for a violent offense, she nonetheless

22

poses no danger to the public and should therefore be placed on probation. This scheme also permits the State to attempt to show reasons other than a defendant's innocence that may have resulted in the dismissal of the indictment, such as loss of evidence, absent or recalcitrant witnesses, or too much time elapsed. In this case, although the State conceded that it could not prove its case, we do not know why that is so. The existing statutory provisions provide a mechanism for the court to inquire into these matters.[7]

¶40 The majority also concludes that the statute arbitrarily permits the State to rely on an indictment that has been dismissed, but not to rely on a conviction that has been reversed or vacated. Op. ¶¶ 16-18. In the latter case, however, there has been a judicial determination that the conviction resulted from a process infected with legal error.

---

[7] The majority opinion states that the Defendant is given no "opportunity . . . to explain or the court to consider the circumstances of the dismissed charges," Op. ¶ 22, and no "opportunity . . . to contest the factual basis for the indictment." Op. ¶ 28. *See* A.R.S. § 13-901.01(B). We read the statute differently, as providing a defendant who is otherwise eligible for discretionary probation under the general drug sentencing laws to contest the factual basis for the indictment and to contend that a previously dismissed indictment should not prevent her from being placed on probation. That Gomez is precluded from eligibility for probation because she was on parole for another crime when she committed the drug offenses at issue here does not affect the way the statute works for all offenders. It simply renders this defendant ineligible for probation.

Once a conviction has been judicially reversed or vacated, it no longer exists for purposes of sentence enhancement. *State v. Kiser*, 111 Ariz. 316, 317, 529 P.2d 215, 216 (1974). The dismissal of an indictment, however, is usually done at the request of the prosecution, often for reasons unrelated to the defendant's guilt or innocence. Such a dismissal does not erase the fact that a grand jury has found probable cause, and it does not make the indictment cease to exist in the way that a judicial reversal does for a conviction. The interposition of a judicial determination provides a rational, non-arbitrary distinction between dismissed indictments and reversed or vacated convictions.[8]

¶41    Ironically, the majority's interpretation leads to the same result for those defendants under pending indictment for violent crimes that it condemns for those whose indictments were dismissed. Those defendants under pending indictments, whose

---

[8]    That courts have determined that a vacated conviction no longer is a "conviction" for purposes of sentence enhancement should not alter the analysis of this exclusion from entitlement to suspension of sentence for those indicted for violent crimes. The United States Supreme Court has called the exclusion of vacated or reversed convictions from the common understanding of the term "convicted" "an obvious exception to the literal language of the statute." *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 115 (1983). There is no compelling reason that such an "exception to the literal language" must also apply to indictments for violent crimes, given the public's desire to deny the benefits of mandatory probation to those who might be violent offenders.

24

rights similarly have not been adjudicated, are also excluded from automatic eligibility for mandatory probation.

¶42     In sum, A.R.S. § 13-901.01(B) simply permits conviction or indictment for a violent crime to serve as an alarm that signals the parties and the court that this defendant's record should be carefully examined to determine whether the defendant is a violent offender who should not be placed on probation.  The alert served its purpose in this case.  Because Gomez had been indicted for a violent, gun-related crime in her past, the court conducted an inquiry into her suitability for probation.  *See* A.R.S. § 13-604.04(B) (2001) (crime of violence involving use of deadly weapon).  It came to light that she was not eligible for probation under the regular sentencing provisions because she committed her drug offense while on parole for another crime.  *See* A.R.S. §§ 13-3407(C), -604.02(B).  The statutory scheme performed its function of allowing additional inquiry.[9]

---

[9]     Consideration of prior indictments in the criminal sentencing context is not unknown.  Once one *Blakely*-compliant aggravating factor has been proved, for example, previous indictments may be used to aggravate a sentence.  *See State v. Martinez*, 210 Ariz. 578, 585, ¶ 26, 115 P.3d 618, 625 (2005) (holding that judge may consider additional aggravating factors once one *Blakely*-compliant factor has been established); *see also State v. Johnson*, 183 Ariz. 623, 635-36, 905 P.2d 1002, 1014-15 (App. 1995) (holding that trial court properly aggravated sentence based on grand jury's probable cause determination resulting in an indictment), *aff'd on other*

25

¶43      In short, the present scheme, if interpreted according to its plain language, is not irrational or arbitrary, nor does it lead to absurd results.  I would therefore interpret A.R.S. § 13-901.01(B) according to its terms and not insert terms such as extant or pending that the people did not include when they adopted Proposition 200.[10]

_____
                    Rebecca White Berch, Vice Chief Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice

_____
*grounds*, 186 Ariz. 329, 922 P.2d 294 (1996); *State v. Rebollosa*, 177 Ariz. 399, 401, 868 P.2d 982, 984 (App. 1993) (to same effect).

[10]   Because of the majority's disposition, we need not reach the constitutional issue decided by the court of appeals.