IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

STATE OF ARIZONA, *Appellee,*

*v.*

RODNEY CHRISTOPHER JONES, *Appellant.*

No. 1 CA-CR 16-0703
FILED 6-26-2018

———————————————

Appeal from the Superior Court in Yavapai County
No. P1300CR201400328
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

———————————————

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela, Dominic Emil Draye
*Counsel for Appellee*

Craig Williams, Attorney at Law, PLLC, Prescott Valley
By Craig Williams
*Counsel for Appellant*

Arizona Attorneys for Criminal Justice
By Sarah L. Mayhew
*Amicus Curiae*

---

**OPINION**

Judge Jon W. Thompson delivered the Opinion of the Court, in which Judge Thomas C. Kleinschmidt[1] joined, and to which Presiding Judge Kenton D. Jones dissented.

---

**T H O M P S O N**, Judge:

¶1        Rodney Jones appeals his convictions and sentences for one count each of possession of the narcotic drug cannabis and possession of drug paraphernalia.  Jones asserts the trial court erred in denying his pretrial motion to dismiss after determining he was not immune from prosecution under the Arizona Medical Marijuana Act (AMMA), Ariz. Rev. Stat. (A.R.S.) §§ 36-2801 to -2819 (2014).  We hold that AMMA does not immunize Jones from prosecution for the use and possession of cannabis under the circumstances presented here, and affirm Jones's convictions and sentences.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        The relevant facts are undisputed.  In March 2013, Jones was found in possession of a jar containing 0.050 ounces of hashish.  At the time, Jones was a registered qualifying patient using marijuana for medicinal purposes.  Jones was later indicted on one count each of possession of the narcotic drug cannabis and possession of drug paraphernalia — the jar containing the cannabis.  He moved to dismiss the charges, arguing the indictment was deficient as a matter of law because his valid AMMA card provided an absolute defense.  The motion was denied following an evidentiary hearing.

¶3        Jones waived his right to a jury trial and, in September 2016, was convicted as charged.  The following month, Jones was sentenced as a non-dangerous, non-repetitive offender to concurrent presumptive terms of 2.5 years' imprisonment for possession of a narcotic drug and one year for possession of drug paraphernalia and given credit for 366 days'

---

[1]        The Honorable Thomas C. Kleinschmidt, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

presence incarceration. Jones timely appealed, and this Court has jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) (2018), 13-4031 (2010), and 13-4033(A)(1) (2010).

## DISCUSSION

**¶4** Jones appeals the trial court's order denying his motion to dismiss. We review an order denying a motion to dismiss criminal charges for an abuse of discretion and will reverse if the court "misapplies the law or exercises its discretion based on incorrect legal principles." *State v. Smith*, 242 Ariz. 98, 104, ¶ 22 (App. 2017) (citing *State v. Mangum*, 214 Ariz. 165, 167, ¶ 6 (App. 2007)) (quoting *State v. Slover*, 220 Ariz. 239, 242, ¶ 4 (App. 2009)). We review the interpretation and application of statutes *de novo*. *State v. Nixon*, 242 Ariz. 242, 243, ¶ 5 (App. 2017) (citing *State v. Carver*, 227 Ariz. 438, 441, ¶ 8 (App. 2011)). Because AMMA was voter-initiated, our primary objective is "to give effect to the intent of the electorate." *Reed-Kaliher v. Hoggatt*, 237 Ariz. 119, 122, ¶ 6 (2015) (quoting *State v. Gomez*, 212 Ariz. 55, 57, ¶ 11 (2006)); *see also Pedersen v. Bennett*, 230 Ariz. 556, 558, ¶ 7 (2012) ("[C]ourts liberally construe initiative requirements and do not interfere with the people's right to initiate laws 'unless the Constitution expressly and explicitly makes any departure from initiative filing requirements fatal.'") (quoting *Kromko v. Superior Court*, 168 Ariz. 51, 58 (1991)).

**¶5** In construing a statute, we read its words in context and will ascribe a meaning that gives effect to all relevant provisions and avoids an unconstitutional result. *See Stambaugh v. Killian*, 242 Ariz. 508, 509, ¶ 7 (2017) (citing *David C. v. Alexis S.*, 240 Ariz. 53, 55, ¶ 9 (2016); *J.D. v. Hegyi*, 236 Ariz. 39, 40-41, ¶ 6 (2014)); *State v. Lindner*, 227 Ariz. 69, 70, ¶ 6 (App. 2010). "If the statute is subject to only one reasonable interpretation, we apply it without further analysis." *Stambaugh*, 242 Ariz. at 509, ¶ 7 (quoting *Wade v. Ariz. State Ret. Sys.*, 241 Ariz. 559, 561, ¶ 10 (2017)).

**¶6** The parties agree hashish is a form of cannabis distinguishable from the green leafy substance commonly referred to as marijuana.[2] They likewise agree cannabis is classified as a narcotic drug

---

[2] Hashish is widely recognized as "'the resin extracted' from the marijuana plant." *State v. Bollander*, 110 Ariz. 84, 87 (1973). Cannabis is defined within the criminal code as "[t]he resin extracted from any part of a plant of the genus cannabis, and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds or its resin," and

and that its possession is generally prohibited under Arizona's criminal code. *See* A.R.S. §§ 13-3401(20)(w) (classifying cannabis as a narcotic drug); -3408(A)-(B) (proscribing the knowing possession or use of a narcotic drug as a class four felony); *Bollander*, 110 Ariz. at 87. The parties also acknowledge AMMA generally protects a registered qualifying patient from arrest, prosecution, or penalty arising out of the medical use of "marijuana" if that patient does not possess more than the allowable amount — 2.5 ounces of "usable marijuana." *See* A.R.S. §§ 36-2801(1)(a)(i), (8), -2811(B)(1). Useable marijuana is statutorily defined as "the dried flowers of the marijuana plant, and any mixture or preparation thereof, but does not include the seeds, stalks and roots of the plant." A.R.S. § 36-2801(15).

¶7        The parties disagree as to whether hashish is included within AMMA's immunities.[3] Jones argues hashish is a preparation of the marijuana plant and, because he possessed less than 2.5 ounces of hashish, he was immune from prosecution for its possession.[4] The State argues

_____

"[e]very compound manufacture, salt, derivative, mixture or preparation of such resin or tetrahydrocannabinol." A.R.S. § 13-3401(4).

[3] Jones suggests the definitions contained within the criminal code and those within AMMA conflict, and, because the provisions of AMMA are more recently enacted, they control. However, we conclude AMMA and the criminal code may be read together. *See Berndt v. Ariz. Dep't of Corrs.*, 238 Ariz. 524, 528, ¶ 11 (App. 2015) (citing *Baker v. Gardner*, 160 Ariz. 98, 101 (1988) ("Only if two statutes truly conflict do we apply the more recent or more specific provision and disregard the other."). The criminal code proscribes the use and possession of narcotic drugs derived from the marijuana plant. AMMA protects a medical user from prosecution and conviction for using marijuana if the patient proves, by a preponderance of evidence, his actions "fall within the range of immune action." *State v. Fields ex rel. Cty. of Pima*, 232 Ariz. 265, 269, ¶¶ 14-15 (App. 2013) (citing *Fid. Sec. Life Ins. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 225, ¶ 9 (1998); *State v. Rhymes*, 129 Ariz. 56, 57 (1981)); *see also Reed-Kaliher*, 237 Ariz. at 123, ¶¶ 15-17. Arizona law generally criminalizes the use or possession of marijuana and hashish; we here are concerned then only with the breadth of the immunity from prosecution available under AMMA.

[4] As expressed by counsel for Amicus in oral argument, "What AMMA does is AMMA establishes that for these people with these debilitating conditions marijuana *in any preparation* is medicine." (Emphasis added.)

possession and use of cannabis is not protected by AMMA because it is neither marijuana nor a preparation thereof, but "is merely [the] separati[on] [of] one part of the plant from another."

¶8        Under the AMMA:

> A registered qualifying patient . . . is not subject to arrest, prosecution or penalty in any manner, or denial of any right or privilege . . . [f]or the registered qualifying patient's medical use of marijuana pursuant to this chapter, if the registered qualifying patient does not possess more than the allowable amount of marijuana.

A.R.S. § 36-2811(B)(1); *see also Reed-Kaliher*, 237 Ariz. at 122, ¶ 8. AMMA defines marijuana to include "all parts of any plant of the genus cannabis, whether growing or not, and the seeds of such plant." A.R.S. § 36-2801(8).

¶9        The State argues that by not specifically including extracted resin within its description of immunized marijuana, AMMA adopts the "preexisting law distinguishing between cannabis and marijuana." We agree. We construe statutory language in light of existing understanding. "Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." A.R.S. § 1-213 (2016). "When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate the administrative and judicial interpretations as well." *Bragdon v. Abbott*, 524 U.S. 624, 645 (1998); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 322 (2012) ("If a statute uses words or phrases that have already received authoritative construction…they are to be understood according to that construction."); *id.* at 327 ("Repeals by implication are disfavored.").

¶10        According to our supreme court, hashish is "'the resin extracted' from the marijuana plant," criminalized as cannabis, a narcotic drug, and distinct from marijuana. *Bollander*, 110 Ariz. at 87. "[T]he legislature has recognized hashish and marijuana as two distinct forms of

---

Jones's opening brief states, "Per the Arizona Medical Marijuana Act (AMMA), codified as A.R.S. § 36-2801, the use of marijuana and 'any mixture *or preparation* thereof' was decriminalized for medical use." (Emphasis added.)

cannabis. . . . but marijuana alone has been singled out for separate treatment under our statutes." *Id.* We have held that our legislature's differing treatment of hashish and marijuana is to be attributed to the great potency of the former, rendering it "susceptible to serious and extensive abuse." *State v. Floyd,* 120 Ariz. 358, 360 (App. 1978).

¶11        AMMA is silent as to hashish.  Prior understanding of the pertinent words strongly indicates that AMMA in no way immunizes the possession or use of hashish.

¶12        That AMMA immunizes medical use of a mixture or preparation of the marijuana plant does not immunize hashish.  "Mixture or preparation" means the combining of marijuana with non-marijuana elements to make "consumables" such as brownies and the like.  A.R.S. § 36-2801(15).  Hashish, by contrast, is processed from the separated or extracted resin.

¶13        The dissent, citing *State ex rel. Montgomery v. Woodburn ex rel. Cty. of Maricopa*, 231 Ariz. 215, 216 (App. 2012), notes that the language of a voter initiative is determinative if it is clear and unequivocal.  There is, in AMMA, no clear and unequivocal language immunizing hashish.  If the drafters wanted to immunize the possession of hashish they should have said so.[5]  We cannot conclude that Arizona voters intended to do so.

¶14        We cannot speculate that the voters, in allowing the limited use of marijuana to ameliorate patients' suffering and distress, would, if they also intended to similarly immunize the use of hashish, have allowed the same quantity of narcotics as of the relatively benign flowers of the marijuana plant.

## CONCLUSION

¶15        Jones's convictions and sentences are affirmed.

---

[5] *Cf.* Colo. Const. art. XVIII, § 16: "Personal Use and Regulation of Marijuana," expressly legalizing hashish ("marijuana" includes "the resin extracted from any part of the plant…") and Colo. Rev. Stat. Ann. § 12-43.4-901(4)(f) (2016), restricting the sale of hashish (elsewhere defined as a "retail marijuana product") in a single transaction to a fraction of that allowed for marijuana, obviously because of the greater potency of hashish.

**J O N E S, Judge,** dissenting:

**¶16**         The AMMA immunizes the medicinal use of "marijuana" by registered qualifying patients.  The specific definition of marijuana, found within the AMMA, clearly encompasses all forms of the marijuana plant, including its resin, and is consistent with the spirit and purpose of the AMMA.  These circumstances evidence an intent to include hashish, or cannabis, *see supra* n.3, within the scope of substances protected by the AMMA, and we must give effect to that intent.  Accordingly, I respectfully dissent.

**¶17**         The appellate court's primary objective in construing statutes adopted by a voter initiative is to give effect to the intent of the electorate.  *Reed-Kaliher*, 237 Ariz. at 122, ¶ 6 (quoting *Gomez*, 212 Ariz. at 57, ¶ 11).  The most reliable indicator of that intent is the language of the statute.  *White Mountain Health Ctr., Inc. v. Maricopa Cty.*, 241 Ariz. 230, 249, ¶ 68 (App. 2016) (citing *U.S. Parking Sys. v. City of Phx.*, 160 Ariz. 210, 211 (App. 1989), and *Cty. of Cochise v. Faria*, 221 Ariz. 619, 622, ¶ 9 (App. 2009)).  "When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends."  *State v. Burbey*, 243 Ariz. 145, 147, ¶ 7 (2017) (citing *Stambaugh*, 242 Ariz. at 509, 511, ¶¶ 7, 17).  Only when the language is susceptible to different reasonable meanings does the court consider "secondary interpretation methods, including consideration of the statute's 'subject matter, its historical background, its effect and consequences, and its spirit and purpose.'"  *Id.* (quoting *State ex rel. Polk v. Campbell*, 239 Ariz. 405, 406, ¶ 5 (2016)).

**¶18**         The AMMA protects a registered qualifying patient from arrest, prosecution, or penalty arising from the use of "marijuana" for medicinal purposes.[6]  A.R.S. § 36-2811(B)(1).  Although the term "marijuana" may, in some contexts, be understood to refer only to the leaves of the cannabis sativa plant, the majority's reliance upon a common understanding of the term is misplaced because the AMMA specifically defines "marijuana."  A statutory definition trumps any meaning "generally and ordinarily given to such words."  *Enloe v. Baker*, 94 Ariz. 295, 298 (1963) (citing *Sisk v. Ariz. Ice & Cold Storage Co.*, 60 Ariz. 496, 501 (1943)); *see also State v. Petrak*, 198 Ariz. 260, 264, ¶ 10 (App. 2000) ("If statutory terms

---

[6]  A registered qualifying patient is presumed to be using marijuana for medicinal purposes if he does not possess more than the allowable amount.  A.R.S. § 36-2811(A)(1).  The State did not present any evidence to rebut this presumption, *see* A.R.S. § 36-2811(A)(2), and the purpose of Jones' use is not at issue here.

are defined, we apply that definition.") (citing *State v. Reynolds*, 170 Ariz. 233, 234 (1992)). Therefore, the AMMA's definition of "marijuana" controls our analysis of the word within the context of its application.

**¶19** The Act defines "marijuana" broadly to include "all parts of any plant of the genus cannabis whether growing or not, and the seeds of such plant." A.R.S. § 36-2801(8). The resin extracted from the marijuana plant — cannabis — is a part of a plant of the genus cannabis, just as sap is a part of a tree. Cannabis is therefore "marijuana," as defined within the AMMA, and subject to its protections.

**¶20** The majority nonetheless suggests a special meaning of "marijuana" was intended within the AMMA because the resin and leaves are treated differently under the criminal code. *See supra* ¶ 10. But words and phrases may not be given an acquired meaning if they are otherwise defined within the statutory scheme. *See Bell v. Indus. Comm'n*, 236 Ariz. 478, 483, ¶ 28 (2015) (citing *Kilpatrick v. Superior Court*, 105 Ariz. 413, 421 (1970)); *State v. Cox*, 217 Ariz. 353, 356, ¶ 20 (2007) (citing *State v. Riggs*, 189 Ariz. 327, 333 (1997), and A.R.S. § 1-213); *see also People v. Mulcrevy*, 182 Cal. Rptr. 3d 176, 180-81 (Ct. App. 2014) (adopting the pre-existing definitions of marijuana and concentrated cannabis where the state's medical marijuana act did not otherwise define the terms) (citing *People v. Scott*, 324 P.3d 827 (Cal. 2014)). Here, the AMMA *does* define "marijuana" for purposes of delineating the bounds of its grant of immunity, and a prior understanding of the term, memorialized in a separate section of the code, cannot supplant that definition.

**¶21** Nor is it appropriate to adopt distinctions advanced under the criminal code where those definitions contradict the plain language of the AMMA. Again, the AMMA defines "marijuana" broadly to include "all parts of any plant of the genus cannabis, whether growing or not, and the seeds of such plant."[7] A.R.S. § 36-2801(8). In contrast, Arizona's criminal

---

[7] The majority states that the definition of marijuana includes "a mixture or preparation of the marijuana plant." *See supra* ¶ 12. This is incorrect. The "mixture or preparation" language is included within the definition of "usable marijuana." This term is defined separately from "marijuana" within the AMMA and is relevant only in calculating the weight of "marijuana" against the "allowable amount" a patient may possess under the AMMA. *See State v. Gamez*, 227 Ariz. 445, 449, ¶ 27 (App. 2011) ("Statutes that are *in pari materia* — those that relate to the same subject matter or have the same general purpose as one another — should be

statutes separately proscribe the use and possession of marijuana — defined as "all parts of any plant of the genus cannabis, *from which the resin has not been extracted*, whether growing or not, and the seeds of such plant" — separately from the use and possession of cannabis — defined as "the resin extracted from any part of a plant of the genus cannabis." A.R.S. § 13-3401(4), (19) (emphasis added). The drafters of the AMMA chose different words to define "marijuana" than those used within the criminal code, and the court must "presume those distinctions are meaningful and evidence an intent to give a different meaning and consequence to the alternate language." *State v. Harm*, 236 Ariz. 402, 407, ¶ 19 (App. 2015) (citing *Egan v. Fridlund-Horne*, 221 Ariz. 229, 239, ¶ 37 (App. 2009)). Thus, the omission of the phrase "from which the resin has not been extracted" from the definition of "marijuana" in the AMMA evidences an intent to abandon — not adopt — the criminal code's distinction between the marijuana plant and its resin. *Cf. Hauskins v. McGillicuddy*, 175 Ariz. 42, 47-48 (App. 1992) (rejecting the argument that differences in the definition of "excusable neglect" advanced by A.R.S. § 12-821 and Arizona Rule of Civil Procedure 60(c) evidenced an intent to create a new and different meaning where the terms were defined almost identically).

**¶22**        While consideration of the history and purpose of the AMMA is not necessary to apply its plain language, *see Heath v. Kiger*, 217 Ariz. 492, 495, ¶ 9 (2008) (citing *Jett v. City of Tucson*, 180 Ariz. 115, 119 (1994)), an

---

construed together as though they constitute one law.") (citing *State v. Barraza*, 209 Ariz. 441, 444, ¶ 10 (App. 2005)); *see also* A.R.S. §§ 36-2811(B) (providing immunity from arrest, prosecution, or penalty to a registered qualifying patient who "does not possess more than the allowable amount of marijuana"); 2801(1)(a) (defining the "allowable amount of marijuana" as "[t]wo-and-one-half ounces of usable marijuana"), (1)(c) (excluding from the "allowable amount" any "[m]arijuana that is incidental to medical use, but is not usable marijuana"), (15) (defining "usable marijuana" as "the dried flowers of the marijuana plant, and any mixture or preparation thereof" but excluding "the seeds, stalks and roots of the plant and . . . the weight of non-marijuana ingredients combined with marijuana and prepared for consumption as food or drink"). Notably, the AMMA does not exclude the "nonusable" parts — the seeds, stalks, roots, or the marijuana "incidental to medical use" — from the scope of its immunity. Accordingly, the classification of specific parts of the marijuana plant as usable or nonusable is relevant only to determine whether a person exceeds the allowable amount of marijuana permitted under the AMMA, and the "mixture or preparation" language does not alter the definition of "marijuana."

expansive definition of marijuana is consistent with the AMMA's purpose "to protect patients with debilitating medical conditions . . . engage[d] in the medical use of marijuana," *State v. Gear*, 239 Ariz. 343, 345, ¶ 11 (2016) (quoting Prop. 203, § 2(G), Ariz. Sec'y of State, 2010 Publicity Pamphlet 83). Although cannabis is understood to be more potent than the unadulterated leaves of the marijuana plant, and a patient could potentially obtain "more" medicinal value by choosing 2.5 ounces of a product containing cannabis than from choosing 2.5 ounces of one containing leaves from the marijuana plant, this result is not impossible or absurd. Nor does the increased potency of cannabis preclude appropriate medical use. Distinctions among forms of marijuana may make sense within the context of punishing illegal recreational drug use but serve no legitimate purpose where substances are used for therapeutic reasons. *See Reed-Kaliher*, 237 Ariz. at 123, ¶ 17 (noting a legislative intent "to distinguish between illicit use and lawful medicinal use of such drugs" as marijuana, narcotic, or prescription drugs while placed on probation) (citing A.R.S. § 13-3408(G)); *see also* A.R.S. § 13-3412(A)(7)-(8) (exempting from criminal prosecution persons possessing or using narcotics pursuant to a doctor's prescription). Different forms or delivery methods of marijuana may be more or less appropriate, depending upon the patient's age, condition, abilities, and desired dosage. *See* Daniel G. Orenstein, *Voter Madness? Voter Intent and the Arizona Medical Marijuana Act*, Ariz. St. L.J. 391, 407-08 (2015). When considered in the context of medicinal use, there is no logical reason to limit how the therapeutic compounds found in marijuana are introduced into the body. Thus, I cannot agree that permitting a registered qualifying patient to use a particular form of marijuana for medical purposes is *per se* dangerous or, more importantly, contravenes the spirit and purpose of the AMMA. Indeed, a person not engaged in the medical use of marijuana remains subject to penalty and prosecution.

**¶23**       Finally, the regulations promulgated by the Arizona Department of Health Services (ADHS) to effectuate the AMMA further support my conclusion. *See Hahn v. Pima Cty.*, 200 Ariz. 167, 170 n.2, ¶ 6 (App. 2001) (noting administrative regulations may be persuasive authority) (quoting *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 65 (2d Cir. 1997)). An applicant for a dispensary registration certificate from ADHS is required to provide a copy of its bylaws specifying whether the dispensary plans to "[p]repare, sell, or dispense marijuana-infused non-edible products." Ariz. Admin. Code R9-17-304(C)(8)(b)(vi). According to ADHS's dispensary handbook, non-edible products include "any non-edible items, such as *concentrates*, sold that contain medical marijuana" and must be labeled with the amount of marijuana they contain. ADHS, *Medical Marijuana Verification System Dispensary Handbook*, at 11,

http://www.azdhs.gov/documents/licensing/medical-marijuana/dispensaries/dispensary-handbook.pdf (published June 8, 2017) (emphasis added). A dispensary may sell these products as long as the patient does not exceed his "allowable amount of marijuana" within a fourteen-day period. *Id.* The regulations and handbook confirm ADHS's understanding that all forms of marijuana, including the resin of and concentrates derived from the marijuana plant — cannabis — are subject to the protections of the AMMA.

**¶24** It is not speculation, but rather, adherence to the basic canons of statutory construction, which controls resolution of the present appeal. In my view, the inquiry ends at the plain language of A.R.S. § 36-2801(8): "Any and all parts of any plant of the genus cannabis, whether growing or not, and the seeds of such plant" includes both the leaves of the marijuana plant and the resin extracted therefrom. Additionally, application of the definition as written is consistent with the spirit and purpose of the AMMA and neither impossible nor absurd. To hold otherwise supplants the statutory language approved by the voters of this State in favor of an arguably more palatable but unfounded interpretation, and that is simply not within the purview of the appellate court. *See Bd. of Ed. of Pearce Union High Sch. Dist. v. Leslie*, 112 Ariz. 463, 465 (1975) ("[W]here the language of a statute is plain or unambiguous and the meaning does not lead to an impossibility or an absurdity, courts must observe the natural import of the language used and are not free to extend the meaning though the result may be harsh, unjust or mistaken policy.") (citation omitted).

**¶25** Because Jones was a registered qualifying patient subject to the protections of the AMMA and possessed a quantity of cannabis less than the allowable amount of "marijuana" as the term is defined within the AMMA, he was immune from prosecution for possession of the narcotic drug cannabis and associated drug paraphernalia. Accordingly, I would reverse his convictions and sentences.

